## ORDER OF RAILROAD TELEGRAPHERS v. RAILWAY EXPRESS AGENCY, Inc.*

Civ. A. No. 2223.

District Court, N. D. Georgia, Atlanta Division.

June 26, 1942.

* Judgment reversed by Circuit Court of Appeals, 137 F.2d 46, and judgment of the U.S.C.C.A. was reversed by the Supreme Court, 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. —.

William G. McRae, of Atlanta, Ga., and Leo J. Hassenauer, of Chicago, Ill., for plaintiff.

Blair Foster, of Atlanta, Ga., and Albert M. Hartung, of New York City, for defendant.

RUSSELL, District Judge.

This is a suit instituted by the Order of Railroad Telegraphers against the Railway Express Agency, Incorporated, seeking to have this court enforce an award of the Third Division of the National Railroad Adjustment Board. In the proceeding eventuating in the award and in this suit the Order of Railroad Telegraphers appear as the representative of joint railroad express agents employed on the lines of the Seaboard Air Line Railroad. The term "joint railroad express agents" refers to and describes those individuals who are railroad agents and likewise express agents at designated points on the named railway. The respective parties and the board as concerned in this proceeding will be referred to as the O. R. T., the agency, the board, and the joint-agents.

The record of the proceeding before the board is exceedingly voluminous and embraces a wide range of what is denominated by the parties numerous and various "briefs", "pleadings", "oral presentation", "memorandum", "surrebuttal," "reply," relating to the question of jurisdiction of the board, and thereafter a response, oral argument, answer to oral argument and "reply to the answer." It is stipulated here that proceedings before the board are informal to the extent that testimony in the sense of evidence given under oath is not usually received; that the board generally acts upon unsworn statements contained in the documents above referred to. That such statements become a part of the record before the board and are considered by it in making its judgments and decisions. It is further stipulated that this rule of the board was applied in the present instance. It should be stated that some of the documents contained affidavits of various parties or its officers. All together there are sixteen exhibits in the present record, one exhibit having fourteen sub-exhibits, two others having one each. The parties have, for the convenience of the court, entered into a stipulation of facts identifying and explaining the exhibits, and have also stipulated the correctness of the exhibits as well as the truth of certain facts set forth in the exhibits.

The dispute revolves around the force and effect to be given an agreement concerning rates of pay and working conditions entered into on August 1, 1917 between the Southern Express Company and a representative of the joint-agents, and in connection therewith the validity of individual agreements and modifications of the 1917 agreement by the agency at sixteen of its offices, affecting through the years twenty-two joint agents. It should be stated that the agency contends that it has never assumed and is not bound by the 1917 agreement.

The agreement of 1917, above referred to, contains fourteen brief articles, and, as relates to the present controversy, it is designated "Southern Express Company-rates of pay and regulations for joint-express and railroad agents on the Seaboard Air Line Railway." Article 1 applies the "schedule" solely to express agents as above designated. Article 2 prescribes payment to be made as commissions on total business received and forwarded, based on previous year's business, and sets forth specified commissions. It is provided that when commissions do not exceed $10.00 per month a guarantee of $10.00 per month will be paid. Article 3 provides that at points where agents are required to transfer express matter to or from other lines or trains, they will be paid a minimum of $10.00 per month for such service. Article 9 provides that agents will be allowed to deduct their commissions at the close of each report. Article 12 provides "these rules are not to be construed so as to reduce compensation at points where the rates of pay are in excess of the above rates." Article 14 provides "no change will be made in the foregoing articles until after notice of thirty (30) days in writing has been given."

On July 1, 1918 express business of the Southern Express Company on the Seaboard Air Line Railway was taken over by the American Railway Express Company, the express business of which on such railway was taken over on March 1, 1929 by the Railway Express Agency, Inc., the defendant herein. The agency by means of individual agreements with agents at specified locations made what is contended are unlawful changes in the 1917 agreement by reason of reduction in transfer rates; abandonment of minimum monthly guarantee; and establishment of a flat rate of $5.00 per car on carload shipments.

In October 1935 the President of the O. R. T., in behalf of the General Chairman of the O. R. T. on the Seaboard Air Line Railway instituted the proceeding before the board predicated upon the following claim:

"1. The commission rate on carload express shipments accruing to the joint railway-express agent at Lawtey, Fla., as established by Article 2 of the Express Agreement of August 1, 1917, and all other joint agencies on the Seaboard Air Line handling carload express shipments, shall be restored as of the date the rates are arbitrarily reduced.

"2. That the minimum amount of commission of Ten Dollars ($10.00) per month, as established and guaranteed by Article 2 of the Express Agreement of August 1, 1917, shall be restored to the joint railway-express agency at Rutherford, Ala., and at all other joint railway-express agencies where the minimum rate has been arbitrarily reduced or reduced through individual agreement between the express company and agent; and that these agents be retroactively reimbursed in the amount of the difference that should have been paid under the Express Agreement.

"3. That all transfer allowances established by Article 3 of the Express Agreement of August 1, 1917, and higher rates in effect which have been arbitrarily changed, or changed by individual agreement, as at Moncure, N. C., shall be restored retroactively to the date such changes were made in violation of the Express Agreement, and all agents affected be paid the difference due them under said Express Agreement."

The respondent agency denied the jurisdiction of the board, contending that under the Railroad Adjustment Act, 11 U.S.C.A. § 1200 et seq., the relation of employer and employee did not exist between it and the joint-agents, and that even if such relationship did exist respondent had no contract with such employees and that therefore there could be no violation thereof within the provision of the Railway Labor Act, 45 U.S.C.A. § 151 et seq. This contention was denied, the board holding that it had jurisdiction of the dispute and ordered that the case be heard on its merits. Thereafter further responses of fact and argument were presented, the third division board was divided, a referee was named and the board made its findings and award.

In the present petition the O. R. T. sets forth the award and asserts that thereunder the agency should be required to pay to it as a representative of the persons for whose benefit such order was made the sum of $46,314.86. Specification is made of the amount due individual agents by name of agent and name of station. The petitioner prays for attorney's fees and that the court enter such judgment by writ of mandamus or otherwise as may be appropriate to enforce the order of the board requiring the agency to make effective the award. The defendant agency reasserted affirmative defenses which by amendment have been reduced so that those now presently insisted upon are in effect: (1) That the board was without jurisdiction for the reason that there was on June 17, 1934 no dispute or case pending within the terms of the statute. (2) That the agency did not assume, become subject to, and is not bound by the agreement of August 1, 1917, and that therefore the order of the board which in effect required it to pay a sum equaling the difference between the commission specified by the contract and those actually paid under the individual agreements is arbitrary and unreasonable. (3) That it does not owe the total amount or sums alleged to be due the individuals. (4) That for reasons stated the individual contract for maximum commission on shipments of refrigerated carloads of strawberries from Lawtey, Florida was a valid contract. (5) That the award and order of the board are arbitrary and of no effect and validity for the reason that no sufficient findings of the fact are made by the board to support its award, nor do the findings of fact made by the board support the award; and that there was no substantial evidence before the board to support or authorize the finding, award or order of the board to the effect that (a) defendant was bound by the contract of August 1, 1917; (b) that the contract was breached when defendant made separate and different compensation arrangements with certain joint railway-express agents, and (c) that there was any pending dispute which gave the board jurisdiction to make the award or issue an order thereon.

Upon a trial of the case before this court, in addition to the stipulation of facts above referred to, and in accordance with the reservation therein contained, evidence was introduced upon the issue of whether there was a case pending and unadjusted as of the date of the enactment of the Railway Labor Act. From this it appears that from the sixteen stations and twenty-two joint-agents employed thereat during the time covered by the present controversy there were four instances of claims presented seeking to recover the difference in the compensation paid and that contended to be provided for by the agreement of August 1, 1917. In each of these cases, the last communication being dated March 30, 1934, and the others dated prior thereto, the agency denied the claim and no further steps were taken by any party before June 21, 1934. However, the present claim was presented to the proper official of the agency before the matter was submitted to the Board.

Defendant contends that the record in this case shows absence of jurisdiction because, as urged, there was no case pending and unadjusted on June 21, 1934. Defendant's position is that while the dispute which was heard by the Adjustment Board may have arisen subsequent to the effective date of the Railroad Labor Act, the award of the Board, and the plaintiff's present suit seeks to deal with matters and enforce rights, arising prior to June 1934, but as to which there was at that time no dispute pending.

Careful examination of the voluminous record built up in the proceeding before the Railroad Adjustment Board, and the lengthy stipulation of facts, consideration of the voluminous briefs submitted by counsel, as well as independent investigation, has consumed much time.

Defendant contends that the Board was without jurisdiction to consider the dispute presented to it, or to make the award which it did because there was "no case pending on June 21, 1934" for the reason that any claims which had been presented had been either definitely rejected by the Agency, or else settlement had been reached with the claiming employee. Certain it is that the Agency had refused to discuss the claims of individual employees growing out of the reduction in commission on carload shipments, only four of which appear with any definiteness to have been presented, and two of which had been settled with the Agents involved. However, it does appear from the record as a whole that, while the claim was not pushed, it was not settled, and unless the declination to settle could remove the "pendency" of the claim, a claim, even if not a "case" was pending and unadjusted on June 21,

1934. Furthermore, regardless of the merits, a claim or a dispute was presented subsequent to the passage of the Railroad Labor Act as amended, 45 U.S.C.A. § 151 et seq. This was a claim for restoration of commission rates, though growing out of an earlier alleged illegal reduction. In the hearing before the Board where the question of its jurisdiction was expressly raised, the Agency relied only upon two points, first that no employer-employee relationship existed between the parties, and second, that it was not bound by the agreement of August 1, 1917. The claim of the O. R. T. was that the agreement had been arbitrarily breached by the Agency, and that the employees were entitled to recover retroactively to the date of the reduction the difference between commissions actually paid and those due under the agreement, and further that the original rate should be restored. Thus, it embodied at least from the standpoint of the claim of the O. R. T. a dispute which in part arose after the effective date of the Railroad Labor Act as amended, 1934. Therefore, the Board had jurisdiction to hear. The question of the authority of the Board to render its award upon the claim was expressly involved and this question of jurisdiction, being primary, should first have been presented to the Board and it should be in clear cases only that courts called upon to enforce the award should vitiate the same upon grounds not urged or presented to the Adjustment Board. Of course, clear absence of jurisdiction would render the award unenforcible, but failure to object before the Board upon all available grounds renders a subsequent attack subject to the closest scrutiny and requires to sustain it clear and unmistakable showing of absence of jurisdiction. Such is not made to appear in this case.

Thus, assuming the power and authority of the Board to hear and determine the dispute presented by the claim of the O. R. T., consideration will be next given to the case on the merits. The facts in the case, while extremely lengthy, are not in substantial conflict.

The Adjustment Board found against the contention of the defendant, most strenuously urged, that the contract of August 1, 1917, between the Southern Express Co. and the joint-agents, had never been assigned to it, nor accepted by it, nor was it bound by its terms. The Board found that "from the making of that agreement in

1917 until in 1930 when the carrier reduced the commission rates and transfer allowances without conference and negotiation with the General Committee representing the joint-agents, the agreement continued in force and was observed by both the General Committee representing the agents or agencies and the respective successors of the Southern Express Company, and the facts are evidenced that the rates, rules, and requirements of that agreement did not expire with the change of ownership, management, or operation of the carrier, but had continued to exist as a contractual agreement between the two parties until changed in the manner provided in the agreement."

■ After consideration of the facts and conduct of the parties as submitted to the Adjustment Board, and giving effect to the provisions of the statute that the findings of the Board "shall be prima facie evidence of the facts therein stated," it is concluded that the defendant has failed to overcome the finding of the Board and will be held to be obligated by the agreement of August 1, 1917.

■ Defendant contends that the award is too indefinite for enforcement because no specific amount is found to be due any employee, it being only general as to classes without individual specification. It relies on the ruling in System Federation No. 59, etc., v. L. & A. R. Co., 5 Cir., 119 F.2d 509. However, in the present case the issue was presented to the Board on the broad grounds of the applicability of the agreement and the right of the employees to have their pay restored retroactively to the date of the reduction. The award deals with the classes of illegal reductions claimed and orders the carrier to pay the amount due employees in the specified classes from the date of the reduction. As the figures and computations may all be secured from the books of the carrier this is sufficiently definite and in fact has been made specific by the stipulation in the present suit as to the exact amount each joint-agent in question is entitled to recover if found so entitled under the applicable law and facts. Under these circumstances, and the parties having agreed thereon there would appear to be no necessity whatever for either dismissing the suit without prejudice, or staying the same until on a re-reference to the board, definite findings of fact and a definite award is made, in accordance with the procedure set

out in System Federation No. 59 v. L. & A. R. Co., supra.

The present suit seeks to articulate the conditions and claims arising at the sixteen different stations in question to the general award. The facts surrounding each station and the controlling conduct of the parties, the facts and circumstances surrounding each individual agreement or situation, have been stipulated under sixteen paragraphs, and the definite amount due each joint-agent, if the court determines him entitled to recover "under the facts and applicable law," is likewise stipulated.

The controlling question concerns the rights of the agency and the joint-agents to enter into individual agreements covering compensation at the sixteen stations at which were employed the twenty-two persons for whom recovery is sought in this suit. Finding the agreement of 1917, to be binding between the parties, and that the individual agreements were contrary to its terms, and that the General Committee representing the joint-agents was not consulted about, and did not negotiate such individual agreements, the Board concluded that the latter were "invalid and a violation of the principles of that agreement unless negotiated and ratified between the principals of the original agreement." The Board found "that in the conditions of the instant case an agreement exists and did exist in which the joint-agents making individual agreements with the carrier, had previously made an agreement with the representative of the O. R. T., and so long as they were parties to that agreement they were bound by it, and so long as that agreement was in force any agreement subsequently made which was at variance with that original agreement was void unless the original agreement had been removed or voided by the same process as when it was made.

"In other words in the claim at issue the facts are evidenced that the joint Railway-Express Agents on the lines of the Seaboard Air Line Railway were working under a collective agreement which had been properly negotiated between and ratified by the carrier, or the Express Company, and its successors, and the organization of which they formed a part. So long as these joint Railway-Express Agents were employed by the carrier in such capacity, they were working under the rules of that agreement and were bound by its specifica-

tions and requirements; and any other supplementary individual agreement or contract made or entered into that would in any manner change or modify, invalidate or set aside, or that was at variance with the terms, rules and requirements of that agreement, was invalid and a violation of the principles of that agreement unless negotiated and ratified between the principals of the original agreement."

The Board further found that as no notice of change had been given as required by Article 14 of the Agreement of August 1917, the contract remained in force.

■ Proper determination of this important question has presented great difficulty. In one view the conclusion of the Adjustment Board would appear to be one of law only, as to which this court should exercise independent judgment uninfluenced by the presumption of correctness afforded facts found by the Board. However, full consideration of the question impels the conclusion that in the nature of the case, the type of the dispute, the public interest in the contractual relationship between interstate carrier employer and employee (evidenced and controlled by legislation), the ultimate conclusion of the Board upon a question involving mixed questions of fact and law is entitled, in a suit to enforce the award, to the presumption of prima facie correctness afforded by the statute. 45 U.S.C.A. § 153 (p). As argued by the plaintiff, the language of the statute is substantially the same as that of the Interstate Commerce Commission Act. Meeker v. Lehigh Valley Ry. Co., 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas.1916B, 691. There is little difference between the legal determination by the Interstate Commerce Commission of the question of infliction of damages by application of the law to the facts, 49 U.S.C.A. § 16(1) (2), and the determination of the question now under review. Similar considerations require like application of the awards of the Railroad Adjustment Board. This Board is likewise "appointed by law and informed by experience." Illinois Central Ry. Co. v. I. C. C., 206 U.S. 441, 454, 27 S.Ct. 700, 704, 51 L. Ed. 1128, 1134. It deals with and determines disputes arising from a relationship which has its own peculiar problems and customs, the existence of which developed "unwritten laws" and procedure even prior to effective statutory regulations. This de-

velopment and its historical background is well portrayed by the decisions in the Railway Clerks case (Brotherhood of Railway and Steamship Clerks v. Texas & N. O. R. Co.), in the District Court, 24 F.2d 426; 25 F.2d 873; in the Circuit Court of Appeals, 5 Cir., 33 F.2d 13; and the Supreme Court, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. The presumption of validity afforded the findings of the Adjustment Board by the statute is only recognition of accepted fact that in such disputes a Board composed of men with knowledge of the entire relationship and peculiar circumstances surrounding the interstate-rail-carrier employer and its employees is, in the first instance, the proper agency to settle disputes and adjust differences in the manner which will promote the avowed statutory purpose to prevent interruptions to interstate commerce.

■ The conclusion is required that the burden of showing the invalidity of the award (which admittedly rests upon the defendants as to findings of fact) extends also to the effect of the award where dependent upon mixed questions of law and fact. Here the defendant has not carried this burden, and fails to maintain its defense upon the ground that the award is without facts to support it and contrary to law because of the individual agreements it relied upon.

Though further lengthening an already too long opinion, some further observations may be appropriate. Even without regard to the presumptive correctness of the award of the Board, the conclusion reached by it appears correct.

■ The manifest purpose of the Railroad Labor Act is the protection of the right of employees to collective bargaining through representatives of their own choice. The statutes evidence a clear expression of Congress (the exclusive policy-making body in such matters) that industrial peace and uninterrupted commerce can be better maintained if employment relations between rail carrier and employee are conducted by bona fide representatives of a majority of the class or craft. Even before the mandatory provision the amendment of the Railroad Labor Act of 1934, 45 U.S.C.A. § 152 (4th), the propriety of majority rule in such matters had become well recognized by those most vitally concerned. The provisions of Sec. 152 (4th), supra, merely expressed the concept, already well established as a practical matter,

that the true representative of the majority could more effectively promote the best interests of all in arranging terms and conditions of employment. No question of individual right of contract in the first instance is here involved. If it were, a different conclusion might well be required. The question involves the validity of individual agreements made, without retraction of their representative, by persons subject to the collective agreement.

■ In view of the manifest purpose of the statute now under consideration it would seem that in such circumstances any sanction of individual agreements contrary to the terms of the collective agreement, made by one employed and working under it, would permit, and indeed encourage, the violation of the "Treaty", Yazoo & M. V. R. Co. v. Webb, 5 Cir., 64 F.2d 902, and therefore should not be permitted. By such means the entire structure of the collective agreement could be broken down. If changes may be effected in sixteen instances out of three hundred, they may be multiplied until one hundred and sixty changes may be effected, and what began as an agreement of the majority be reduced to the contract of a minority. If changes in compensation may be made, other conditions may be required which could well result in the nullification of the employee's right to freely choose his representative for collective bargaining and the adjustment of disputes. It is not difficult to conjecture the difficulty of maintaining the social peace between interstate rail carrier-employer and its employees, so plainly sought by the statute, if varying contracts of compensation existed between those in similar employment, and if such employees be held accountable for any yielding to the mass power of the employer directed against him as an individual. Congress has declared such matters to be impressed with a public interest and any individual agreement is not a matter of concern alone to the contracting parties.

It may be here remarked that Congress doubtless had in mind that what might be denominated individual "agreements" are frequently such in form only, without any substance. It is not improper, especially in such matters of public interest, to look beyond the form to discover the truth. Serious doubt of actual uninfluenced agreement may be frequently presented when one "agrees" to less than he is entitled to receive by existing contract. This is true

here, as is presented by the fact that within a few months after one such agreement the employee, through his representative in the original contract, was strongly asserting his claim for compensation as originally provided, notwithstanding his recent individual agreement. No criticism of the employer is implied further than the statement that it failed to perceive the scope of the statute, or mistakenly assumed it was not bound by the collective agreement of 1917.

■ The policy of the statute contemplates collective agreements and forbids individual agreements by those subject to the terms of the collective agreement. If courts are permitted to pass upon and determine the validity of separate and individual agreements in the light of the circumstances surrounding their making, diverse rulings would undoubtedly result in what would be in effect the validating of contracts in some instances by judicial construction and in others destroying identical contracts, depending upon the individual opinion entertained by the Judge hearing the cause of the bona fides of the employer and employee in providing other and different terms of employment and compensation than those provided by the collective agreement. As a matter of law, in such an instance, either the Railroad Labor Act forbids contracts with employees covered by a collective agreement, except such as be negotiated in accordance with its terms, or else it permits individual agreements without regard to the circumstances attending their execution. If the right of individual contracts, regardless of the existence of a collective agreement, exists, in the nature of the case courts are concerned only as a matter of general contract law and without regard to the purpose and provision of the Railroad Adjustment Act. Furthermore, if courts may determine in any particular case whether the individual contracts in question are sufficiently numerous or important to destroy the collective agreement by "piecemeal," then the judgment of the court is, without any express authority, substituted for the judgment of Congress and the question of whether employees are entitled to the benefits of collective bargaining by their chosen representatives may well become dependent, not upon the terms of the statute, but upon the varied and diverse judgments of the courts, dependent in each case upon whether a Judge hearing any particular case determines that the individual agreements are made in good faith, and whether they are sufficiently numerous to dissipate the effect of the collective agreement. This is not consonant with the express and positive declaration of Congress in its purpose by the passage of the Railroad Adjustment Act to provide the right of self-organization and of uncoerced designation by employees of their representatives through whom they may bargain collectively. Clearly the statute determines the importance of collective bargaining in maintaining amicable relations between employer and employees engaged in commerce and adopts this plan of contracting as essential to the carrying out of the Congressional determination. While as held in the Virginian Railway case, Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789, the carrier is not precluded from making individual contracts directly with individual employees, still when such a collective agreement has been made the policy of the Act forbids the making of other and different contracts with individuals subject to the collective contract who have designated representatives, except after negotiation with such representatives. Indeed, it is not an onerous requirement of the employer and presumably where changes in business conditions, etc., arise at particular locations, such as appears to be true in the present instances involved in this case, there would be no difficulty in reaching a satisfactory adjustment of the general contract applicable to the particular location. It is presumed that the representative is familiar with the entire situation and, considering the composite nature of the agreement, can judge the interest and effect of individual action from a broader viewpoint than can the individual. No point is here made that any of the individuals have retracted or attempted to retract their designation of representative.

The findings of the Adjustment Board that the agreements reducing the scheduled commission rates were a violation of the collective agreement and invalid is correct in law and is sustained.

■ After the propounding of a question by the Court upon the hearing, defendant argues here the validity of notices sent to each joint agent in the Spring of 1930, notifying them that the commission rate of carload shipments was reduced to $5.00 per car. This notice was not in compliance with the terms of the Railway

Labor Act of 1926, 45 U.S.C.A. § 156, in effect at that time. It purported to be effective immediately, thus not giving the required thirty days' notice and failed to give the time and place for conferences between the representatives of the parties interested in such intended changes. It was therefore impossible to provide the time for conferences provided by the Act. Thus without regard to the question as to whether notice should have been served upon the bargaining representative or the employees, the notice failed to comply with this important provision of the statute and could well · be disregarded by the employees. This action by the carrier, as well as the negotiation of the individual agreements, doubtless resulted from the position of the carrier that it was not bound by the 1917 agreement, and its further position, now abandoned, that no employer-employee relationship existed between it and the joint agents. These questions having been determined adversely to the carrier's contention, the means then employed to obtain relief from what it deemed to be burdensome terms of employment, are rendered ineffectual, and the defendant carrier is obliged to comply with the terms of the award as sought to be enforced in this proceeding, with the exception now stated.

One instance of dispute, apparently involving $167.11, stipulated here was not presented in any way to the Board, and, therefore, in this suit for enforcement of the award, presents no question for adjudication. This related to the formula to be used in calculating commission on the previous year's business at a station which is seasonal, i.e., not open each month.

This presents neither the question of reduction in commission nor individual agreement, but construction of the agreement of August 1917, a question not within the claim or the award and, therefore, not within the scope of this suit, which is admittedly predicated only upon the award. Accordingly, the claim arising at Meggets, S. C., asserted by or in behalf of H. D. McPherson and C. B. Copeland, is dismissed without prejudice.

It follows from the above that the plaintiff is entitled to an order requiring restoration of the rates of commission provided by the agreement of August 1, 1917, and the maintenance of such schedule commission payments until they are changed in accordance with the provisions of such agreement.

Judgment will be entered for the remaining twenty plaintiffs in the amounts stipulated, the form of which may be presented after notice, and at the time of entry a reasonable attorneys' fee will be fixed in accordance with the statute.