**BROTHERHOOD RAILWAY CARMEN OF the UNITED STATES AND CANADA, AFL–CIO, CLC, Plaintiff,**

v.

**The BELT RAILWAY COMPANY OF CHICAGO, Defendant.**

No. 86 C 1465.

United States District Court,
N.D. Illinois, E.D.

April 2, 1987.

Thomas A. Woodley, Gregory K. McGillivary, Mulholland & Hickey, Washington, D.C., Marvin Gittler, Asher, Pavalon, Gittler, Greenfield & Segall, Ltd., Chicago, Ill., for plaintiff.

Woodrow M. Cunningham, Bernard Roccanova, The Belt Ry. Co. of Chicago, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff ("the Union") brings this action under 45 U.S.C. § 153 First (p) for enforcement of Award and Order No. 9362 of the National Railroad Adjustment Board, Second Division ("Board") issued January 26, 1983, as clarified by Interpretation No. 1 to that award issued May 22, 1985. It has moved for summary judgment. That motion is granted.

### Background

The dispute between the Union and defendant ("the Railroad") dates back to 1980.[1] Five persons with the classification of carmen-helper had been working for some time as temporary carmen-mechanics. After four years (950 days) of work in that status they would qualify as full carmen-mechanics and establish a seniority date in that classification. On April 2, 1980 those five were demoted to work as carmen-helpers. The demotions did not last long. One of the men was back at work as a carmen-mechanic in less than 30 days and all of them had been restored within five months. The Union contended that the demotions were merely disciplinary actions in disguise, so labeled in order to evade the procedural requirements for discipline under the collective bargaining agreement. The Board agreed in Award No. 9362, and ordered reinstatement "according to their seniority" and compensation for any or all wage losses.

The Railroad apparently made up the difference in pay for each man without much difficulty, but refused to credit the period during which they had been demoted toward the 950 days they needed for full

---

1. Defendant does not appear to dispute any of the following facts. In any case, plaintiff has included them in a statement of undisputed material facts pursuant to N.D.Ill. General Rule 12(e), to which defendant has made no response. They are therefore deemed admitted under General Rule 12(f).

carmen-mechanic status. When furloughs were made, apparently on the basis of time worked in the carmen-mechanic status, the failure to credit those days also meant that these five were furloughed earlier than they would have been without the improper demotion, and they lost yet more days. Thus the effect of their loss of days toward seniority in the classification was multiplied. The Union returned to the Board for an interpretation of Award No. 9362, asking whether the relief intended in that award included restoration of seniority, and specifically whether the time spent improperly demoted should be counted as time working as carmen-mechanics. The Board agreed that it should.

The Railroad responded by crediting the five men with days worked as carmen-mechanics for all the days worked as carmen-helpers during the demotion. However, it refused to make any adjustment for the time lost during furloughs. It appears that all of these men now have qualified as carmen-mechanics. At stake, however, is their beginning seniority date in that classification and their place on the seniority roster.

The Union contends that the restoration of seniority which the Board mandated will not be complete until the Railroad credits these men for the time that they would not have been furloughed except for the effect which the improper demotions had on their seniority. It asks this court to order the Railroad to credit the men with that time, and adjust their seniority as carmen-mechanics accordingly. The railroad argues, first of all, that the claimants have not exhausted their administrative remedies: that only demotion, not furlough, was in the claim before the Board, and so furlough is a new issue not within the scope of the award. Alternatively, it argues that if injury from the furlough is within the scope of the award, then what to do about it is a matter of interpretation of the award and the Union should return to the Board to request a second interpretation.

## Discussion

■ This court has very little freedom of movement when a petitioner who has been successful before the National Railroad Adjustment Board comes to us for enforcement of the Board's award. By the language of the statute we can do only one of two things: enforce the award or set it aside. 45 U.S.C. § 153 First (p); *see, e.g., Gunther v. San Diego & Arizona Eastern Railway,* 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965). The grounds on which we can set the award aside are extremely narrow. *See Gunther,* 382 U.S. at 261, 264, 86 S.Ct. at 370, 372; *Steffens v. Brotherhood of Railway, Airline and Steamship Clerks,* 797 F.2d 442, 447, *amended,* 123 L.R.R.M. (BNA) 2835 (7th Cir.1986). The Railroad does not raise any of them here, and certainly there is no indication that they exist. It would seem to follow that we have no option at all but to enforce the award.

As a matter of judicial gloss on the statute, however, there is another alternative. If the award and order are so vague and indefinite that they cannot reasonably be enforced, then we should remand the matter to the Board for clarification. *International Association of Machinists and Aerospace Workers, District Lodge # 19 v. Southern Pacific Transportation Co.,* 626 F.2d 715, 718 (9th Cir.1980); *Railroad Yardmasters of North America, Inc. v. Indiana Harbor Belt Railway,* 166 F.2d 326, 329–330 (7th Cir.1948). The Railroad's argument, though not phrased in this language, seems to go to this alternative. The first contention, presumably, is that we cannot tell whether furlough problems are covered by the award, so the question should first go to the Board for interpretation. The second would be that even if furlough problems are covered, we cannot tell whether the relief the Board granted included adjustments to seniority on account of furlough, so that that question, too, should first go to the Board.

■ In the context of an enforcement action, however, the power to decide what an award means does not lie exclusively with the Board. The petitioners have a strong interest in prompt enforcement of an award which typically has been a long time coming. To avoid unnecessary delays,

the court hearing an enforcement action can and should make ordinary interpretations of the award wherever possible. *Diamond v. Terminal Railway, Alabama State Docks,* 421 F.2d 228, 235 (5th Cir. 1970); *Brotherhood of Railroad Trainmen v. Central of Georgia Railway,* 415 F.2d 403, 415 (5th Cir.1969), *cert. denied,* 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970), *cited with approval in United Transportation Union v. Soo Line Railroad,* 457 F.2d 285, 287 (7th Cir.1972).

■ An award does not become so vague and indefinite as to be unenforceable simply because a party can argue that a portion of it may be unclear or ambiguous. The court can and should resolve any issues of lack of clarity or ambiguity unless those issues implicate an area which is within the special expertise of the Board, such as interpretation of the collective bargaining agreement or the actual merits of the claim. *United Transportation Union v. Southern Pacific Transportation Co.,* 529 F.2d 691, 693 (5th Cir.1976); *Sweeney v. Florida East Coast Railway,* 389 F.2d 113, 115 (5th Cir.1968). In rare cases an award truly will be vague and indefinite— for example, because it is internally contradictory—and so remand to the board is necessary. *See Seaboard World Airlines, Inc. v. Air Transport Division, Transport Workers Union of America, AFL–CIO,* 434 F.Supp. 1124 (E.D.N.Y.1977), *later proceeding,* 460 F.Supp. 603 (E.D.N.Y.1978). The Board also has exclusive jurisdiction over resolution of new factual issues not before it, such as a new class of claimants who are arguing that they are within the scope of the award, *International,* 626 F.2d at 718, or the question of whether a navigator would have been promoted to manager rather than laid off with all other navigators, *Hart v. Overseas National Airways, Inc.,* 541 F.2d 386, 392 (3d Cir. 1976). Interpretation of the collective bargaining agreement, as noted above, also belongs exclusively to the Board. *Gunther,* 382 U.S. at 261; *Choate v. Louisville & Nashville Railroad,* 715 F.2d 369, 372 (7th Cir.1983). Absent these types of issues, however, in an enforcement action it is the court's function to determine what the language of the award means. *Diamond,* 421 F.2d at 235.

■ The issues the Railroad raises thus are fully within our competence to decide. The Union did not need to exhaust administrative remedies because there is no new claim. The seniority problem here is not a new factual issue. Despite the Railroad's attempts to characterize the seniority loss as injury from the furlough, in fact all the Union brings to us is injury from the demotion. If the five men had not been demoted they would have spent fewer days on furlough, and the Railroad does not dispute that here. Thus the seniority problem is properly within the scope of the claim ostensibly decided in Award No. 9362.

The question presented is rather one of the extent of the relief the Board granted in its award as interpreted: whether its restoration of seniority through credit for time improperly worked at a lower classification extended only to crediting the exact days worked as helpers toward days worked as mechanics, or was intended to make the men whole for all seniority losses suffered as a result of the demotion. That question is fully within the power of this court to resolve. *See, e.g., Sweeney,* 389 F.2d at 116–117. The factual question which is within the Board's expertise, and which the Board would need to decide on the merits, has been decided, namely whether or not the demotion was improper.

■ The Board, in fashioning relief, often sets out a general principle of relief and lets the parties, or the court if necessary, apply it, filling in the details. An award is not unenforceable merely because it requires such application. *Hanson v. Chesapeake & Ohio Railway,* 412 F.2d 631, 634 (4th Cir.1969); *Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 55 F.Supp. 319, 323 (N.D.Ga.1942), *rev'd on other grounds,* 137 F.2d 46 (5th Cir.1943), *rev'd,* 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788 (1944). Any reinstatement award also imposes an obligation on the employer of good faith compliance with the intent and spirit of the award, rather than grudging attempts to limit relief to a mini-

mum. *Brotherhood of Railroad Signalmen v. Louisville & Nashville Railroad,* 688 F.2d 535, 543 (7th Cir.1982), *later proceeding,* 742 F.2d 1460 (7th Cir.1984), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 332 (1985). Moreover, make-whole relief is ordinarily the minimum which the Board is likely to order in a reinstatement case, and an employer who stands on an offer of less is unlikely to be complying in good faith. *See id.* at 537; *Brotherhood of Railroad Signalmen v. Chicago, Milwaukee, St. Paul & Pacific Railroad,* 284 F.Supp. 401, 405–406 (N.D.Ill.1968); *Louisville & Nashville Railroad v. Brotherhood of Locomotive Engineers,* 190 F.Supp. 829, 835–836 (W.D.Ky.), *aff'd,* 297 F.2d 608 (6th Cir.1961), *aff'd,* 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963).

■ In light of those principles, the men are entitled to the seniority adjustment they seek. The award is not so vague and indefinite as to make this court unable to enforce it. The Board, at least with Interpretation No. 1, if not before, ordered that the five men be made whole for the effects of the improper demotion on their seniority as well as their pay. It did not spell out every detail necessary to make them whole, but it did not have to. The Railroad had an obligation to comply with its intent in good faith. Since that has not happened, we must apply the general principle to the specific situation. The demotion caused the men earlier and longer furloughs; as a result of the extra furloughs they lost credit toward, and hence seniority as, carmen-mechanics; they need that lost seniority to be made whole. We hereby order that they shall get it.

### Conclusion

Plaintiffs' motion for summary judgment is granted. Defendant is ordered to credit to the five claimants identified in plaintiffs' petition for enforcement all days of work as carmen-mechanics of which they were deprived as a result of their demotion on April 2, 1980, including time spent on furlough which would not have occurred if plaintiffs had worked as carmen-mechanics during the demotion period, for purposes of their seniority as carmen-mechanics. Defendant is also ordered to pay plaintiffs' reasonable attorneys' fees and costs pursuant to 45 U.S.C. § 153 First (p).