**BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES, Plaintiffs,**

v.

**BURLINGTON NORTHERN RAILROAD CO.**

No. 92 C 6308.

United States District Court, N.D. Illinois, E.D.

April 13, 1993.

Solomon I. Hirsh, Chicago, IL, John O'B. Clarke, Jr., Highsaw, Mahoney & Clarke, P.C., Washington, DC, for plaintiffs.

Thomas J. Knapp, Lawrence M. Stroik, Charles W. Shewmake, Odesa L. Gorman-Stapleton, Burlington Northern RR Co., Fort Worth, TX, Kenneth J. Wysoglad, Michael L. Sazdanoff, Kenneth J. Wysoglad & Associates, Chicago, IL, for defendant.

## MEMORANDUM ORDER

ZAGEL, District Judge.

The Brotherhood sued the Railroad to enforce an arbitration award of the Adjustment Board. The Railroad says the Brotherhood is trying to expand the scope of the award beyond the two employees who were the subject of the proceeding to all Brotherhood member-employees. The Adjustment Board dealt with curve oiling on the Railroad's track between Springfield, Missouri, and Hoxie, Arkansas, and ordered that the work be performed by employees represented by the Brotherhood. The Brotherhood wants this rule extended to more of the Railroad's track.[1]

The Railroad says this case involves a question of scope or interpretation of an Award, a matter outside the court's jurisdiction. The Railroad contends that because such a dispute could also be resolved by interpretation of the collective bargaining agreements, it is, in the jargon of the Railway Labor Act, a minor dispute that must be arbitrated, not tried. The Brotherhood says the Award is merely ambiguous and courts may resolve ambiguities. Indeed, the Brotherhood says the Award construed the Scope Rule in the Frisco agreement as giving curve oiling work to Brotherhood employees, and that the Railway refuses to abide by this construction. The facts are that from Springfield to Hoxie the Brotherhood does curve oiling, but on other portions of the former Frisco track it may not always do so.

The context of the dispute is worth a few words. Rails are greased at the curves to reduce wear. Friction and pressure on the

rails are greatest at curves because of centrifugal force. The railroads installed fixed track oiling devices only at high degree curves. These trackside oilers are, and will be, installed and maintained by Brotherhood members. As time passed mobil tracks were invented and installed on locomotives so that all curves could be lubricated. This did not work on low-traffic track and eventually someone figured out how to put the mobil oiler on a hyrail pickup truck. In 1987 the Railway assigned a supervisor to oil the curves by using this truck as he inspected track in his assigned area from Springfield to Hoxie. The Brotherhood disputed the assignment and the Railway responded that this was a new method of work never before done by Brotherhood personnel.

Eventually the matter was taken to the Board with the Brotherhood claiming that the work was reserved under the agreement to Brotherhood members and, if so, whether two members ought to be compensated for not being assigned this work. The request for compensation was denied because the employees were fully employed during the relevant time period.

The Board decided the matter. The issue is what did it decide. The Board stated the claim this way:

(1) The Agreement was violated when the Carrier assigned Track Supervisor L. Prichard instead of Foreman H.L. Woodward and Trackman T.M. Freeman to perform curve oiling work beginning February 9, 1987 (System File B–1118–1/EMWC 87–4–291).

(2) As a consequence of the aforesaid violation: '... we request that Mr. W.L. Woodward be paid at the foreman rate of pay and T.M. Freeman be paid at the trackman rate of pay for 8 hours each for each day that Track Supervisor Prichard works from February 9, 1987 and continue to be paid for as long as the above violation continues.'

Then it stated:

---

1. This is the track covered by a collective bargaining agreement which existed between the Brotherhood and the former St. Louis–San Fran-

cisco Railway. The Burlington Northern is composed by merger of several railroads including the Frisco.

The threshold question to be determined in the instant case is whether the controlling Agreement reserves to the Organization the work now in dispute. We find that the work in question is the track oiling system operated on the hyrail. The Employees claim that track lubrication work has historically been performed by its forces, and the utilization of a new device to perform the work does not, in and of itself, operate to make a new or different operation or to remove it from the scope of the Agreement. Carrier, on the other hand, points out that the Agreement nowhere mentions the particular work at issue, and therefore it acted properly and within its managerial prerogative by assigning the work as it did.

It is true, as the Carrier points out, that the Scope Rule of the Agreement does not make express mention of the work at issue. It is general in nature, and therefore, it was the Organization's burden to show that the work was reserved to its employees by custom or past practice. Our review of the record reveals that Carrier never refuted the Organizations contentions regarding historical practice. To the contrary, Carrier on the property acknowledged that track lubrication has been performed by BMWE employees in the past, though only on high degree curves because of the mechanical difficulties involved in covering the entire system using the old technology. To that extent we find that the Organization has met its *prima facie* burden of proof.

The question becomes, then, whether a change in the technology justifies the performance of the disputed work by supervisory personnel. We think not. The purpose of the work and the reason for doing it remain the same; it is the manner of method of performance that has been affected, and it was the Carrier's burden to show as an affirmative matter that it was justified in assigning such work to supervisory employees not covered by the Agreement. We find neither Agreement support nor Board precedent to substantiate Carri-

er's position. Accordingly, Section 1 of the instant claim must be sustained.

With respect to remedy, however, Claimants were fully employed on the claim dates in question and suffered no loss of earnings as a result of the Carrier's improper action. Therefore, Section 2 of the claim requesting monetary compensation is hereby denied.

The carrier members dissented in writing.

The Board ordered the Railroad "to make effective Award Number 29262 ... as therein set forth; and if the Award includes a requirement for the payment of money, to pay ... on or before August 1, 1992."

The Brotherhood's position is quite simple. The Board may have decided only the claim of two employees, but it did construe the contract to reach the result.[2] From this truth, the Brotherhood draws the conclusion that the Board ordered the Railroad to follow this construction everywhere the contract applies. The Railroad demurs.

There is really very little difference between the parties and the law is not in dispute. If the Award is clear, I have to enforce it. If it is not clear, I have to dismiss this case or remand the matter to the Board. I cannot, under any circumstances, interpret the collective bargaining agreement. If there is an unclear award and the parties argue over the meaning of the collective bargaining agreement, their argument is a minor dispute which must go to arbitration.

Clarity of an award can always be disputed, all language can be deconstructed. Some of the Railroad's argument is of this type. It says, "The Award *concerned* a particular segment of ... track form Springfield, Missouri, to Hoxie, Arkansas, and the time claims of only two ... employees" (emphasis added). It is also true that *Gideon v. Wainwright concerned* a particular criminal conviction in Florida and the claim of one inmate. *Marbury v. Madison* also concerned the claims of a small number of people and simple ministerial acts.

---

**2.** Logically, the Board could have reached the decision by declining to construe the contract and simply noting that the employees are entitled to nothing.

The Board here clearly interpreted the collective bargaining agreement to put track oiling into the Brotherhood's scope of work and that agreement "concerns" all the Frisco track and all the Brotherhood employees under the Frisco agreement. The Railroad's only argument is that the Board did not say explicitly that it meant to apply its ruling across the Frisco board. How it could say it would not is a mystery to me. The Railroad could have asked it (and may still be able to do so) but it did not. So, however, could the Brotherhood. And it is true that the matter was not designated a "lead case," as is sometimes done before the Board.

■ The law is nicely stated by my brother Moran in *Brotherhood Railway Carmen v. Belt Ry. of Chicago*, 658 F.Supp. 136 (N.D.Ill.1987). He there notes that the power to decide what an award means does not lie exclusively with the Board. A court can resolve ambiguities unless they implicate an area within the special expertise of the Board. A court may determine what the language of the Board means unless doing so requires interpretation of the collective bargaining agreement, resolution of new factual issues or if the Board's language is internally inconsistent. *Brotherhood Railway Carmen*, 658 F.Supp. at 138–39.

It would seem to me that none of these exceptions applies here, but Judge Moran gave as an example of a new factual issue "a new class of claimants who are arguing that they are within the scope of the award." *Id.* at 139. Is this a new class of claimant before me? Judge Moran was referring to the case of *Intern. Assoc. of Machinists v. So. Pac. Transp.*, 626 F.2d 715 (9th Cir.1980). There, four traveling motorcar mechanics claimed and won time and a half for hours worked in excess of 175½ hours a month. The union sought application of the award to "similarly situated employees." The Court of Appeals said:

> We cannot determine from our reading of the copy of the ... award, whether the board intended its award to apply solely to the named claimant ... or to all similarly situated motorcar mechanics on a continuing basis. We remand for the board to clarify the scope of its award.

*Intern. Assoc. of Machinists*, 626 F.2d at 718. The precedent is unclear to me because the court did not set out the terms of the award.

■ In any event, the Award at issue here is quite definite. The Frisco contract called for track oiling to be done by the Brotherhood. And I think Judge Moran's characterization of the *Intern. Assoc. of Machinists* opinion is superior to other possible readings of it. Judge Moran thought it stood for the proposition that courts interpret and enforce awards unless they require "resolution of new factual issues ... such as a new class of claimants who are arguing that they are within the scope of the award." *Brotherhood Railway Carmen*, 658 F.Supp. at 139. In this case the class of claimants is not new and no new factual issue to be resolved has been suggested. The Railroad has said only that it would offer more or new evidence on an "old" factual issue. Frankly, I think that a ruling in favor of the Railroad here would lead the enforcement process to the "infinite regress" deplored in *BRC v. Atchison, Topeka and Santa Fe*, 956 F.2d 156, 157 (7th Cir.1992).

The Brotherhood's motion for summary judgment is granted.[3]

---

3. The facts are not in dispute except as to the characterization of documents before the court, and as to legal conclusions. So each statement is adopted as modified by objections. One exception is the objection to plaintiff's Statement 18, *i.e.*, that a witness, when asked a question, gave a certain answer. The statement is true. The only question is whether it is admissible or relevant. The objection to its truth is overruled. Objections to plaintiff's 16 and 18 statements are granted and the statements are modified to accord with the objections.